# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | Case No. 1:07CR00028 |
| v. | ) | **OPINION** |
| **DEMETRIUS TYRONE GARDNER**, | ) | By: James P. Jones |
| | ) | Chief United States District Judge |
| Defendant. | ) | |

*Zachary T. Lee, Assistant United States Attorney, Abingdon, Virginia, for United States; Daniel R. Bieger, Copeland & Bieger, P.C., Abingdon, Virginia, for Defendant.*

The question in this case is whether the defendant has two prior convictions for a felony drug offense within the meaning of 21 U.S.C.A. § 841(b)(1)(A) (West 1999 & Supp. 2007), thus requiring that he be sentenced to life imprisonment. My analysis of the facts and the legal precedent convinces me that he has only one such conviction within the meaning of the statute and thus a sentence of life imprisonment is not mandated.

I

The defendant, Demetrius Tyrone Gardner, has been found guilty by a jury in this court of conspiring to distribute or to possess with intent to distribute fifty or

more grams of crack cocaine.[1] The government filed prior to trial an information pursuant to 21 U.S.C.A. § 851 (West 1999), stating that it intended to rely upon three prior felony drug convictions in order that the defendant might be sentenced to an enhanced punishment under 21 U.S.C.A. § 841(b)(1)(A).[2] The defendant has objected to the information, contending that he has only one such prior conviction.

A hearing has been held on the objection and the defendant has submitted a supplemental memorandum. The defendant's objection is now ripe for decision.

The government relies upon two Virginia convictions—one for felony possession with the intent to distribute cocaine ("Virginia cocaine conviction") and one for felony possession with intent to distribute an imitation controlled substance ("Virginia imitation controlled substance conviction"), both in violation of Va. Code Ann. § 18.2-248 (2007 Supp.) The government also relies upon a prior federal felony conviction for possession with intent to distribute and distribution of cocaine base in violation of 21 U.S.C.A. §§ 841(a)(1) and 841(b)(1)(B) (West 1999 & Supp. 2007) ("federal cocaine base conviction").

---

[1] The defendant was also convicted of two counts of making false statements and acquitted of the offense of using a person under eighteen years of age in the drug trafficking offense.

[2] Section 841 provides, in pertinent part, that if a person is convicted of an offense involving fifty or more grams of crack cocaine, "after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release . . . ." 21 U.S.C.A. § 841(b)(1)(A).

The facts adduced at the hearing and in the presentence report flesh out the circumstances surrounding the conduct which led to each conviction. On June 1, 1999, the defendant sold imitation cocaine to a confidential informant in a controlled buy from a house located on Reservoir Street in Bristol, Virginia. On June 16, 1999, the defendant sold a substance containing cocaine to a confidential informant in a controlled buy from a different house on Reservoir Street. As a result of that transaction, the defendant was arrested and a search warrant for that house was obtained. Later the same day, the search revealed fifty or more grams of cocaine base.

The Commonwealth of Virginia charged the defendant with possession with intent to distribute an imitation controlled substance for the June 1 incident, and with possession with intent to distribute cocaine for the June 16 incident. The charges were contained in one indictment. Pursuant to a plea agreement, the defendant pled guilty to both charges on February 23, 2000.

At the request of the Commonwealth, the federal government prosecuted the defendant for possession of the drugs found in the house on June 16. The defendant pled guilty to that charge on April 17, 2000.

II

"Congress has indicated both in § 841(b) itself and elsewhere that the language 'prior' or 'previous convictions,' when used for sentencing enhancement, means separate criminal episodes, not separate convictions arising out of a single transaction." *United States v. Blackwood*, 913 F.2d 139, 145-46 (4th Cir. 1990). In order to determine if multiple convictions arose from a single transaction, I consider "whether the offenses arose in different geographic locations; whether the nature of the offenses was substantively different; and whether the offenses involved multiple victims or multiple criminal objectives." *United States v. Letterlough*, 63 F.3d 332, 335-36 (4th Cir. 1995).[3] I also consider the time that lapsed between the acts giving rise to the convictions to determine whether the defendant had "the opportunity to make a conscious and knowing decision to engage in another" crime, *id.* at 337, and whether the defendant was charged, tried, and sentenced separately for each conviction, *see Blackwood*, 913 F.2d at 145. No one consideration is preeminent, but "if any one of the factors has a strong presence, it can dispositively segregate an

---

[3] Although the *Letterlough* court actually addressed the issue of what constituted separate convictions within the meaning of the Armed Career Criminal Act ("ACCA"), 18 U.S.C.A. § 924(e) (West 2000 & Supp. 2007), the Fourth Circuit relied upon cases interpreting the ACCA in *Blackwood* to decide what constituted separate convictions for purposes of § 841(b)(1)(A). *See* 913 F.2d at 146-47.

- 4 -

extended criminal enterprise into a series of separate and distinct episodes." *Letterlough*, 63 F.3d at 336.

In *Blackwood*, the Fourth Circuit found that the defendant's convictions for possession of marijuana in his vehicle and possession of marijuana in his hotel room were part of a single transaction. 913 F.2d at 144-45. Important to the court's analysis was the fact that within two hours of the defendant being arrested for possession of marijuana in his vehicle, the police officers discovered the marijuana in the defendant's hotel room. Although the grand jury returned two separate indictments and the cases were assigned separate docket numbers, the cases were consolidated for trial and the defendant was sentenced to serve his sentences for each conviction concurrently. *Id.* at 145.

In this case, I find that the Virginia cocaine conviction and the federal cocaine base conviction arise from the same criminal episode. Similar to the facts in *Blackwood*, the defendant was first arrested for the conduct which led to the Virginia conviction. Later the same day, pursuant to a search warrant, the evidence was discovered which led to the federal conviction.[4] As in *Blackwood*, both convictions

---

[4] In *United States v. Ford*, 88 F.3d 1350, 1365 (4th Cir. 1996), the court held that *Blackwood* did not apply where the prior felony drug convictions were for distribution, rather than possession. In Gardner's case, however, all of the prior convictions were for possession. While in either incident the Commonwealth might have charged him with distribution in light of the facts, it chose not to.

- 5 -

were for possession. Although they were not prosecuted by the same entity, and thus not charged or tried together, the defendant was ordered to serve his sentences for each conviction concurrently.

I do not find, however, that the Virginia imitation controlled substance conviction was part of the same criminal episode. The conduct underlying that conviction occurred on June 1, more than two weeks before the conduct giving rise to the other convictions and at a different location. Although each conviction was for possession, the defendant possessed different substances—cocaine and imitation cocaine. These considerations have such a "strong presence" as to outweigh the fact that each offense was charged in the same document and disposed of by the same plea agreement.

III

My analysis does not end there. Section 841(b)(1)(A) limits the type of convictions that may be counted for purposes of increasing the mandatory minimum sentence to those listed in subsection (a) and other "felony drug offenses." "The term 'felony drug offense' means an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids,

or depressant or stimulant substances." 21 U.S.C.A. § 802(44) (West 1999 & Supp. 2007). *See United States v. Burgess*, 478 F.3d 658, 662 (4th Cir. 2007), *cert granted* 128 S. Ct. 740 (Dec. 7, 2007) ("'[B]ecause the term "felony drug offense" is specifically defined in § 802(44), and § 841(b)(1)(A) makes use of that precise term, the logical, commonsense way to interpret "felony drug offense" in § 841(b)(1)(A) is by reference to the definition in § 802(44).'") (quoting *United States v. Roberson*, 459 F.3d 39, 52 (1st Cir. 2006)).

The defendant's federal cocaine base conviction was a violation of 21 U.S.C.A. § 841(a) and therefore it is counted.[5]

The defendant's Virginia imitation controlled substance conviction resulted from a violation of Va. Code Ann. § 18.2-248(A), which states in relevant part, "[I]t shall be unlawful for any person to . . . possess with intent to . . . distribute . . . an imitation controlled substance." The question, therefore, is whether violation of this code section is a felony drug offense, as defined by § 802(44). I find that it is not.

When interpreting a statute, I look first to the plain language of the statute. *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 126 S. Ct. 2455, 2459 (2006) ("[C]ourts must presume that a legislature says in a statute what it means and means

---

[5] Because I have already concluded that the Virginia cocaine conviction arose out of the same criminal episode, it is not necessary for me to determine whether that conviction could be counted independently for purposes § 841(b)(1)(A).

- 7 -

in a statute what it says there.") (internal citations and quotation marks omitted). Section 802(44) defines "felony drug offense" to mean conduct specifically relating to "narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." The statute is silent with regard to imitation or simulated controlled substances. *Expressio unius est exclusio alterius.* When a statute includes some items of an associated group and excludes others, I presume that Congress purposefully omitted the excluded items. *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003).

A review of the federal cases citing § 802(44) reveals that the great majority of state offenses found to be felony drug offenses involved possession or distribution of an actual controlled substance. The most litigated issue pertained to what constituted a felony. *See, e.g.*, *United States v. Jackson*, 504 F.3d 250 (2d Cir. 2007).

The offenses found to be felony drug offenses that did not involve possession or distribution of an actual controlled substance are most instructive because they delineate the outside boundaries of what is conduct relating to narcotic drugs.

In *United States v. Nelson*, 484 F.3d 257, 258 (4th Cir. 2007), the Fourth Circuit considered whether a conviction under 18 U.S.C.A. § 924(c)(1) (West 2000 & Supp. 2007) for carrying a firearm during and in relation to a drug trafficking crime was a felony drug offense as defined in § 802(44). The court explained that in order

for the government to prove a § 924(c)(1) violation, it must prove that the defendant had used or carried a firearm during and in relation to a drug trafficking offense. *Id.* at 260-61. By pleading guilty to the offense, the defendant admitted "that he not only possessed a firearm, but also did so during and *in relation* to the offense of possession of crack with the intent to distribute." *Id.* at 261 (emphasis added).

In *United States v. Wheeler*, Nos. 97-4426, 97-4475, 1998 WL 416704 at *2 (4th Cir. July 22, 1998), the Fourth Circuit held, without elaboration, that a prior New Jersey conviction for possession of drug paraphernalia with intent to distribute was a felony drug offense.

Other circuits have held that attempted possession of a controlled substance is a felony drug offense, *see United States v. Brown*, 500 F.3d 48, 59-60 (1st Cir. 2007) ("*Brown A*"), and that using a communications facility in order to facilitate commission of a drug offense is a felony drug offense, *see United States v. Mankins*, 135 F.3d 946, 949 (5th Cir. 1998).

The present case differs in one important aspect: The defendant's conviction for possession with intent to distribute an imitation controlled substance did not require the Commonwealth to prove any nexus between the defendant and an actual controlled substance.

- 9 -

The defendant in *Nelson* admitted to possessing a firearm while possessing crack with the intent to distribute it. In *Wheeler*, the New Jersey prosecutors would have had to prove that the defendant possessed drug paraphernalia with the knowledge that it would be used to "plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, ingest, inhale or otherwise introduce into the human body a controlled dangerous substance, controlled substance analog, or toxic chemical." N.J. Stat. § 2C:36-3 (2007). In *Brown A*, the defendant's prior New York conviction required proof that he had knowingly attempted to possess one of a list of actual controlled substances. N.Y. Penal Law §§ 110.00, 220.16 (2008). Finally, by pleading guilty to using a communications facility to commit a drug offense, the defendant in *Mankins* necessarily admitted that he had either committed "an independent drug crime" or that he had "cause[d] or facilitate[d] such a crime." *Mankins*, 135 F.3d at 949.

One other court has had occasion to consider whether an offense devoid of any actual controlled substance was a felony drug offense. In *United States v. Brown* ("*Brown B*"), No. 06-CR-1028-LRR, 2007 WL 1498472 at **3-4 (N.D. Iowa May 21, 2007), the district court concluded that the defendant's prior state convictions for delivery of a counterfeit controlled substance and delivery of a simulated or

- 10 -

Case 1:07-cr-00028-JPJ   Document 67   Filed 02/19/08   Page 10 of 15   Pageid#: 172

counterfeit controlled substance within 1000 feet of an elementary school were felony drug offenses. The court considered that the purpose of making such conduct an offense was to "discourage anyone from . . . appearing to engage in the narcotics traffic" and therefore it "clearly relate[d] to narcotic drugs." *Id.* at *3 (internal citations and quotation marks omitted). The court believed that a contrary decision "would ignore the fact that the Controlled Substances Act itself similarly penalizes the distribution of controlled substances and counterfeit substances," citing 21 U.S.C.A. § 841(a)(2). *Id.* I do not find the opinion persuasive.

First, the Fourth Circuit has explicitly rejected a similar reading of the federal counterfeit substances statute. *See United States v. Sampson*, 140 F.3d 585, 589 (4th Cir. 1998). For purposes of the Controlled Substances Act a "counterfeit substance" is defined as:

> a *controlled substance* which, or the container or the labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, number, or device, or any likeness thereof, of a manufacturer, distributor, or dispenser other than the person or persons who in fact manufactured, distributed, or dispensed such substance and which thereby falsely purports or is represented to be the product of, or to have been distributed by, such other manufacturer, distributor, or dispenser.

- 11 -

21 U.S.C.A. § 802(7) (West 1999) (emphasis added). "That statute seems to have been designed to prosecute the unauthorized use of controlled substances found in commercial settings such as prescription drugs, not those sold in street deals." *Sampson*, 140 F.3d at 589.

It is clear that the defendant's prior Virginia imitation controlled substance conviction is not comparable to a violation of the federal counterfeit controlled substance statute. In fact, it is an act not prohibited by any federal statute. *See id.* ("Simply because a substance looks like cocaine, and the defendant misrepresents to his unsuspecting purchaser that the substance is cocaine, does not make the mere distribution of that substance a violation of the federal narcotics laws.").

Furthermore, I understand that a state's decision to punish possession and distribution of imitation controlled substances may be motivated by a laudable desire to curb behavior which may indirectly promote real drug trafficking or to protect the community from violence which may accompany fraudulent transactions. I do not, however, think that the sentencing enhancement statute, whose purpose is to punish recidivist drug offenders, was written broadly enough to reach those crimes that do not require proof of any connection to a controlled substance.

In *United States v. Mills*, 485 F.3d 219, 222 (4th Cir. 2007), the Fourth Circuit held that a conviction for possession under Maryland's look-alike drug statute

- 12 -

Case 1:07-cr-00028-JPJ   Document 67   Filed 02/19/08   Page 12 of 15   Pageid#: 174

constituted a predicate offense under an enhanced sentencing provision of the U.S. Sentencing Guidelines. That decision, involving as it did the unique language of the sentencing guidelines, is not contrary to the result here.

The sentencing guidelines provide for an increase in offense level for certain firearms offenses if the defendant "had at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S. Sentencing Guideline Manual ("USSG") § 2K2.1(a)(2) (2007). A "controlled substance offense" is defined in the guidelines as:

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (*or a counterfeit substance*) or the possession of a controlled substance (*or a counterfeit substance*) with intent to manufacture, import, export, distribute, or dispense.

USSG § 4B1.2(b) (2007) (emphasis added).

In *Mills*, the defendant had been convicted of a provision of state law that prohibits the distribution of fake narcotics. The court of appeals held that this conviction was one involving a "counterfeit substance" under § 4B1.2(b) because the guidelines do not define "counterfeit substances" and a plain meaning reading of those words must include fake or look-alike drugs, in spite of the fact that the federal statutory definition of counterfeit substance under 21 U.S.C.A. § 802(7) is quite

different. 485 F.3d at 223-24. In doing so, the court noted that in formulating the sentencing guidelines, the Sentencing Commission was not bound by statutory definitions enacted by Congress. *Id.* at 225.

In the present case, however, it is statutory language to be interpreted, and not that of the Sentencing Commission. Section 802(44) makes no mention of counterfeit substances, however those words might be construed in another context.

Finally, to the extent that a felony drug offense may be stretched so wide as to include felony offenses without actual drugs, the rule of lenity counsels against it. "The rule of lenity applies only if, after seizing everything from which aid can be derived, [I] can make no more than a guess as to what Congress intended." *Muscarello v. United States*, 524 U.S. 125, 138 (1998) (internal alterations, citations, and quotation marks omitted). I find that there is "grievous ambiguity," *id.* at 139, about whether Congress intended to impose a mandatory life sentence, designed to penalize repeat drug offenders, predicated upon an offense that did not involve an actual controlled substance.

IV

Having concluded that the Virginia cocaine conviction and the federal cocaine base conviction arose out of the same criminal episode and that the Virginia imitation

- 14 -

controlled substance conviction is not a felony drug offense, I find that the defendant has only one prior felony drug offense within the meaning of 21 U.S.C.A. § 841(b)(1)(A). Accordingly, the defendant's objection to the government's information is sustained.

                                          DATED: February 19, 2008

                                          /s/ JAMES P. JONES
                                          Chief United States District Judge